LINDA LIEBERMAN, Plaintiff, v NORMA PEREZ-VERIDIANO, Defendant.

Supreme Court, Kings County, December 19, 1988

APPEARANCES OF COUNSEL

*Simonson, Hess & Leibowitz, P. C. (Steven L. Hess* of counsel), for plaintiff. *Bower & Gardner (Gary Barbanell* of counsel), for defendant.

## OPINION OF THE COURT

JOSEPH S. LEVINE, J.

On October 20, 1988 a jury rendered a verdict in favor of the plaintiff in a medical malpractice action tried in this Part. The attorneys for the plaintiff have submitted a judgment for the court's signature. This submission is a direct result of the Legislature's enactment of CPLR article 50-A and the directive contained therein at section 5031 that the court and not the clerk of the county enter judgment. The court's role arises from the fact that money judgments are normally entered by the clerk. (CPLR 5016.) The use of the word "court" in article 50-A could only mean the Judge who tried the case, given the context of the word's use and the nature of the review required. Moreover, CPLR 105 (g) defines "court" and "judge" to be synonymous.

CPLR article 50-A is entitled, "Periodic Payment of Judgments in Medical and Dental Malpractice Actions". Its salient feature provides for the periodic payment of verdicts pertaining to future damages. As will become evident in the following paragraphs, the complexity of the statute is exceeded only by the complexity of its application. For the reasons to be stated, the court must reject the proffered judgment and order a new judgment be settled on notice.

The jury awarded the plaintiff damages in the following amounts: pain and suffering to date: $250,000; future pain and suffering for a period of 20 years: $400,000; loss of enjoyment of life to date: $250,000; and future loss of enjoyment of life for a period of 20 years: $300,000. The total amount of damages is $1,200,000. The court denied the defendant's motion to set aside or reduce the verdict but did grant a 30-day stay on the entry of judgment at a postverdict conference on October 28, 1988.

Before dealing with the particular defects of the judgment submitted by the plaintiff's attorney, it may be well to give a brief summary of the requirements of article 50-A. It is fair to say that the verdict of $1,200,000 must be substantially discounted in order to arrive at a true cost of that verdict to the defendant. The law now requires the court to enter judgment

in a "lump sum" for all past damages and for the "first" $250,000 of future damages. The remaining amount of future damages, after allowance for certain adjustments, must be paid out over a term of years in a manner similar to structured settlements. However, in a structured verdict, the jury determines the period of time over which the award for future damages must be paid. The award for future pain and suffering is to be paid over a maximum term of 10 years or less if so determined by the jury.

The court enters judgment for future damages in an amount that equals the "present value of an annuity contract that will provide for the payment of the * * * amounts of future damages in periodic installments." (CPLR 5031 [e].) Now let us analyze the defects in the judgment presented by the plaintiff.

LUMP-SUM FUTURE PAYMENTS

The statute allows $250,000 to be deducted from the future damages and paid as a lump sum to the plaintiff. If there is more than one item of future damages, then the $250,000 is to be deducted in the proportion to which that category of damages represents the total award for future damages. (CPLR 5031 [b].) In this case the plaintiff was awarded $400,000 for future pain and suffering and $300,000 for future loss of enjoyment of life. The plaintiff's judgment subtracts $250,000 entirely from the future pain and suffering award. The law requires this be done on a proportional basis. Therefore, future damages were awarded in the following proportions: pain and suffering: 57%, and loss of enjoyment of life: 43%.

| $400,000 | (future pain and suffering) |
| 143,000 | (57% of $250,000) |
| $257,000 | (to be structured) |
| $300,000 | (future loss of enjoyment of life) |
| 107,500 | (43% of $250,000) |
| $192,500 | (to be structured) |

The foregoing is probably of minor importance because of the similarity between pain and suffering and loss of enjoyment of life. Both items are to be paid out over 10 years.

LOSS OF ENJOYMENT OF LIFE

The court was obliged to charge the jury that the loss of enjoyment of life is an item of damages separate and distinct from pain and suffering. *(See, Nussbaum v Gibstein,* 138 AD2d 193.) CPLR 5031 requires all future damages be paid out over

a term of years set by the jury except for pain and suffering which has a maximum term of payout of 10 years. Does *Nussbaum* require the court to enter judgment for future loss of enjoyment of life for a term of 20 years as set by the jury? The court does not believe so. Before *Nussbaum,* pain and suffering was thought to include loss of enjoyment of life. The statute was enacted at a time when the law considered both types of damages to be, if not identical, then subsumed under the concept of pain and suffering. Therefore, the plaintiff's allowance of a 10-year payout for loss of enjoyment of life was appropriate.

ATTORNEY'S FEE

While it is not clear from the statute whether the judgment should include a provision regarding attorney's fees, the plaintiff included such a provision regarding future damages only. The better practice would have been to include all attorneys' fees. The plaintiff's attorney calculates his fee in the judgment on future damages in such a way that the amount paid to the plaintiff and the fee together exceed the jury's original award. This results from the plaintiff's attorney's insistence that while the fee should be calculated based upon the present value of the future damages, it should not be deducted from that present value. There is no support in the law for this proposition. The pertinent language at CPLR 5031 (c) states, "Payment of that portion of the attorney's fees related to the future periodically paid damages shall also be payable in a lump sum, based on the present value of the annuity contract purchased to provide payment of such future periodically paid damages". The foregoing language was probably intended to mimic the calculation of attorney's fees used in a structured settlement. Therefore, the proper formula for this calculation is that the future damages are reduced to a present value, the attorney's fee is deducted from that present value, and the remainder of the present value is used to generate the periodic payments by the purchase of the annuity.

CALCULATION OF PRESENT VALUE

One of the difficulties of the recent legislative enactment is the concept of present value. The relevant section of CPLR 5031 (e) provides as follows, "the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments. The present value of

such contract shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages". While the court professes no particular actuarial or accounting expertise, it has participated in enough structured settlements to know that the present value of a structure is frequently very different from the actual cost of the annuity, depending upon the plaintiff's life expectancy. However, because the statute requires the jury to set a fixed term for the payout, the actual cost of the annuity should approximately equal the present value of the structure. In this case, the plaintiff has submitted an accountant's affidavit that calculates the present value of the future damages by using an interest rate of 8.3567% per year. This interest rate was based on analysis of five-year Treasury bill rates as published in the Wall Street Journal as of November 4, 1988. In his cover letter to the submission of the judgment, the plaintiff's attorney states that, "although the discount rate listed in the New York Times would benefit the client more so than the discount rate utilized by the actuary, I have been informed that the utilization of the discount rate is inappropriate, since it would not rescue the actual annuity without risk."

The statute does not leave the calculation of present value subject to such discretion. It is mandatory to utilize the discount rate. Whether or not it is appropriate or wise is another question. It should be noted that when the present value is calculated, "the court, as part of its judgment, shall direct that the defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract." (CPLR 5031 [e].) This directive may work to the advantage or disadvantage of the defendant, depending upon the circumstances. However, the law does require the defendant guarantee and secure the annuity contract. CPLR 5032 requires court approval of the actual annuity contract obtained by the defendant. Therefore, the signing of the judgment will not end the Justice's obligation. What criteria will be applied to approving the annuity contract is left unsaid by the CPLR. There is adequate precedent in the area of structured settlements.

### MISCELLANEOUS CONSIDERATIONS

1. The concept of present value engenders difficulties other than its calculation. The attorney's fee is based upon the

present value. The defendant and his or her insurance carrier is obliged to offer and to guarantee the purchase and payment of an annuity contract based upon the plaintiff's calculation of present value. For the protection of all parties involved, it seems to this court that the plaintiff should obtain several estimates or quotes for the annuity from the insurance companies and various structured settlement companies who write annuity contracts. Moreover, the judgment itself should be entered on notice to give the defendants the opportunity to offer their input.

2. The court has been advised that the following technical defects in the judgment must be rectified: (1) a decretal paragraph must be inserted providing for the assessment of costs; (2) the bill of costs should not be attached to the judgment; (3) the plaintiff's address must be added to the judgment; and (4) each decretal paragraph should commence with ORDERED, ADJUDGED, AND DECREED.

CONCLUSION

Reviewing this judgment is an honor the court would rather have avoided. Its faults and defects arise not from the plaintiff's inability to prepare a proper judgment. Rather, it is the result of a good-faith attempt to make sense of a complex statute. This opinion is offered as a step along the road to understanding. Comments are welcome.

Based upon the foregoing, the judgment is rejected and the plaintiff is directed to enter another judgment on notice in conformity with this opinion.